and we'll move to our next case this morning and that is the United States against Tuanqui. All right I think we have both counsel so Mr. McLeese you may proceed. Thank You Your Honor. Richard McLeese on behalf of Ms. Tuanqui comes before the court in this criminal appeal from a jury verdict finding her guilty of ten charges of Medicare fraud and related offenses. In our brief we focus in particular on the substantive Medicare payment charges in counts three to eight with co-defendant Susie Avalonosa who was a government witness and the government's theory as to those payments which were concededly twice a month. The government's theory was that A these payments constituted $600 per patient referral fees and B therefore they were I'm sorry I just wanted to get I did not have the full gallery view I'm sorry and therefore because they were $600 per patient referral fees they constituted illegal kickbacks under the Medicare statute. This was their argument consistently throughout the trial at each stage and it was also the position taken by their witnesses. Their witnesses whose testimony is summarized consistently testified that per patient referral fees were illegal whereas Mr. McLeese can I interrupt you for a minute I'm looking at the indictment itself counts three through nine and the charge is that she paid etc remuneration to a person to induce the referral and and it doesn't specify whether it's per patient or whether it's a lump sum per month it simply asserts payments for referral of patients. The statute doesn't seem to care whether it's per patient or not and I think that the evidence is pretty clear that there was sort of an estimate and an expectation even if it wasn't down to the dollar and that she was actually trying to conceal what she was up to by structuring it that way so so why wasn't that plenty of evidence to support the jury's verdict as charged? Judge I think the problem here is that the government's theory throughout the case and the testimony of their witnesses was that it did make a difference whether it was a lump sum or a per patient referral and it was the government's theory and their evidence to which we as the defense were of course responding. If the government had tried this case on the theory that it doesn't make any difference whether it's a lump sum or whether it's per patient it the only thing that makes a difference is whether the payments are made with the intention of yielding patient referrals. The defense would have been different because the defense in that case would have likely involved focusing on the requirement of willfulness and the question whether Ms. Twonky believed at the time that making lump sum payments contravened the requirements of the Medicare statute and her testimony might well have been introduced then and we might also have relied on what's sometimes referred to perhaps a bit misleadingly as the advice of counsel defense which was litigated. Can I ask I mean so certainly this distinction between per patient and lump sum does not appear in the indictment. Maybe it's in the evolved only at the opening statement this again there are statutes that say a flat fee remuneration violates the statute. Nagelvort for example and some others so I just I'm having trouble accepting the idea that the government was really that narrow in its approach to this case. Well your honor if you look at the statements from the government throughout the trial proceedings from opening statement through responding to our rule 29 motion to closing argument to closing rebuttal argument their argument was consistently that it was a per patient mode of payment and I think that perhaps the reason why they chose that approach is because they realized that their witnesses whom they would be calling to testify took the position as detailed in our brief that the law does draw a distinction between per patient referral fees and flat fees for which there is some sort of implicit or maybe explicit goal of a productivity goal and it's certainly the case in many fields that there are productivity goals whether you're a salesman whether you're a lawyer working for a big firm and are expected to bill a certain number of hours there are certainly many areas where there are productivity goals or aspirations. Well that's true but under the medicare statute pay to play is not something that's acceptable you're not supposed to pay directly or indirectly any remuneration to induce patient referrals so that's there's no prohibition like that that I know of that tells big firms they can't say we expect you to build 2,500 hours a year whatever they say. I understand but again as the as the defense we are responding to the theory embraced by the government and its witnesses throughout the trial and had and as the this court said in the barda case it it doesn't make a difference for these purposes whether the government might have evaluated strictly in terms of the theory that they relied upon at trial because otherwise your honor what the court's doing would be to affirm the legal sufficiency of the evidence on the basis of a trial that Ms. Twonky never had. She did not have a trial where the government's theory was argued to the jury and where their test their witnesses testified that it made no difference throughout. Did they argue the other way that it did make a difference? They didn't say it makes it can only be based on a per patient. They said I'm sorry your honor. Well the statute says you can't pay for in for patient referrals it doesn't say individual or otherwise and the fact that you try the case based on individual people that got that doesn't make any difference. Well your honor um it may not make a difference if the government had chosen that theory but having chosen a particular theory and having the defense shape its defense on the in response to the theory articulated by the government and its witnesses it seems to me there's an element of a bait and switch or sort of a shell game if you are putting out a theory of guilt the defense responds to that theory of guilt and then on appeal you're changing to a different theory of guilt that you never argued at trial. Did the instructions say that it had to be per patient? The instructions did not say that your honor but I I think it's fair to say that particularly whereas here you have rather vague language that the instructions tend to be understood by the jurors in light of the lawyer's arguments and I think that there are a number of cases that hold. Did you have to have instructions based on the fact that it wasn't per patient? Well you'd already ruled you'd already filed your rule 29 motion at that point so this issue was certainly on your mind. Actually the rule 29 motion was certainly on my mind as a matter of trial strategy and argument and our whole strategy was shaped by the intent to respond to the theory as presented by the government and again Judge Connie I would refer to the Barta case where the court said and they said this in overturning the defendant's conviction on the basis of legal insufficiency they said it doesn't make a difference if some other theory might have been legally valid the government is stuck when they come to the appellate court with the theory that they tried the case on. I see that my time is up your honors and I vote. Thank you. Thank you. You may have pleased the court. Sophia Vickery for the United States. There was overwhelming evidence in this case that the defendant paid Susie Abiunosa kickbacks in exchange for patient referrals. Multiple witnesses described the arrangement between the defendant and Ms. Abiunosa. Ms. Abiunosa and the defendant had an arrangement. Ms. Abiunosa was to refer 10 to 12 patient referrals per month in exchange for that the defendant paid her $3,600 twice a month. So Ms. Vickery it would be helpful for me at least if you would address Mr. McLeese's primary argument which is that they were somehow misled into thinking that you were really saying $600 per patient and that you didn't prove that that you proved only that there were on appeal is this is the same as it was at trial which is that the defendant paid Ms. Abiunosa literally in exchange for patients and that's what's required to violate the statute. I think that the confusion about simply the per patient or quota arises from the fact this arrangement between the defendant and Ms. Abiunosa 10 to 12 patients on the high end that's $600 per patient. So a lot of the witnesses described exactly how they understood that arrangement and what hexagram and the defendant paid her. I just wanted to point out that at opening that's the transcripts pages 13 and 17 the government said that the defendant bought the names of patients to enroll entirely consistent with our theory on appeal and the same at closing that's the transcripts 985 to 986. It's also as your honor mentioned in the indictment and in the jury instructions that's page 975. It's a violation to induce the referral of an individual or individuals to another for the provision of services or for the arrangement of the provision of services. In terms of counsel no instruction as to individuals right. I'm sorry I didn't hear your question. No instructions as to in payment to individual regarding individuals. Correct there was no instruction that it had to be that each payment had to be linked to a particular individual or the particular's individual name. The instruction consistent with the case law in this circuit is that payments to compensate past referrals or induced fusion referrals payments that are made in exchange for referrals are a violation of the anti-kickback statute and that was the instruction provided to the jury. At that point it's a factual inference. The jury rejected the and also made a trial that the payments were were flat fees and accepted the government's inference which is also supported by the evidence and the testimony of the witnesses who described their understanding of the arrangement between the defendant and Ms. Avellinoza. Those witnesses included Ms. Avellinoza herself pages 287 to 289. Ms. Buenavista who was a manager at hexagram who also attended the meetings and Mr. Jimenez who was the director of finance at hexagram that's 382 to 383 which is every person who was present in those meetings with the exception of the defendant. Each of those witnesses testified as to their understanding as to why the defendant was paying Ms. Avellinoza and what those payments were for. All of them explained that they were in exchange for the patient referrals. If the court has no other questions the government would ask the court to affirm the judgment of conviction. All right thank you very much. Mr. McLeese your time had expired but we kept you busy with questions so you can have an extra minute if you have some concluding thoughts. If you can get yourself unmuted. You have our sympathies Mr. McLeese. We're still not hearing you Mr. McLeese because you're still on mute. You'll have to find your oh there you go okay. I flunked technology. There's no dispute that there that these the purpose of these payments was to generate referrals. There was a dispute as to whether as the government contended these were per patient referrals. If the government had at trial relied upon the theory that they're relying on in this appeal as I indicated the defense would likely have been different in so far as it would have been relevant to the decision of Ms. Twonky's to testify on the question of willfulness. Counsel you didn't object to the instruction that didn't make no reference to individual patients nor did you attend instruction that related to only individual patients. No I was responding to the arguments that the government made throughout and that the all right thank you. Now something that you didn't present at trial. Go ahead you can respond to. I'm not sure that I heard your point judge. I said you're arguing now something you did not present at trial. That is it could only be guilty if it involved individual patients. Your honor of course the defense is in the position of responding to the legal arguments and theories that the government propounds and that was what we did. And if the government had relied on this lump sum theory we would have been prepared to introduce the testimony of a lawyer in regard to the so-called advice of counsel defense. The jury was instructed as to not as to individual patients but as to referral in general. Yes but your honor I submit that the instructions in this case and in other cases are understood in the context of the party's arguments. It's not uncommon for example for what might appear on its face to be a flaw in an instruction to be upheld because the jurors would have understood that instruction within the context of the lawyer's arguments and I submit that same principle holds here. All right thank you very much. I think we have your argument the case is taken under advisement.